UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ATLAS JONES and SOPHIE SMITH,<br><br>      Plaintiffs,<br><br>v.<br><br>DEBBIE CRITCHFIELD, in her official capacity as Idaho State Superintendent of Public Instruction; IDAHO STATE BOARD OF EDUCATION; LINDA CLARK, WILLIAM G. GILBERT JR., DAVID TURNBULL, SHAWN KEOUGH, KURT LIEBICH, CALLY J. ROACH, and CINDY SIDDOWAY, in their official capacities as members of the Idaho State Board of Education; BOISE STATE UNIVERSITY; JEREMIAH SHINN, in his official capacity as Interim President of Boise State University; UNIVERSITY OF IDAHO; C. SCOTT GREEN, in his official capacity as President of University of Idaho,<br><br>      Defendants. | Case No. 1:25-cv-00413-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiffs Altas Jones and Sophie Smith's Motion for Preliminary Injunction (Dkt. 11), Motion to Seal and to Proceed Anonymously (Dkt. 12), and Second Motion to Seal (Dkt. 36). Defendants Debbie Critchfield et al. (collectively "Defendants") oppose Plaintiffs' Motion for Preliminary Injunction (Dkt. 29), but do not oppose, in practice, Plaintiffs' Motion to Seal and to Proceed Anonymously (Dkt. 28).

Defendants also filed their own Motion to File Declaration Under Pseudonym. Dkt. 30.

On August 15, 2025, the Court held oral argument and took the matters under advisement. Upon review, and for the reasons outlined below, the Court DENIES Plaintiffs' Motion for Preliminary Injunction, GRANTS Plaintiffs' Motion to Seal and to Proceed Anonymously, GRANTS Plaintiffs' Second Motion to Seal, and GRANTS Defendants' Motion to File Declaration Under Pseudonym.

## II. OVERVIEW

This is a difficult case. While the Court has elsewhere highlighted this difficulty, this observation is not a mere platitude. The Court recognizes and appreciates that the issues involved here are deeply personal. Reasonable people can reach different conclusions about the wisdom of legislation such as the statute Plaintiffs challenge today, the definitions utilized by the parties and the Court, and the fairness of any decision. As the Court has often noted, there are real people downstream from the difficult and technical legal arguments and analysis contained in any decision. The Court does not take its responsibility lightly.

At issue today is a preliminary question: have Plaintiffs—two transgender individuals—carried *their* burden to clearly show they are entitled to relief from a newly enacted Idaho law, House Bill 264 ("H.B. 264"), that restricts bathroom usage at colleges and universities to biological sex? The Court finds the answer is no, Plaintiffs have not carried their burden *today*. This does not mean Plaintiffs may not achieve success in the future. Nor is this a final adjudication on the merits.

However, having weighed the arguments, the Court finds Plaintiffs have not

persuasively shown they are likely to succeed on their Equal Protection claim because Defendants have demonstrated how H.B. 264 is substantially related to their interest in protecting privacy—even as applied solely to the two Plaintiffs. Similarly, the Court finds Plaintiffs have not met their burden to show a likelihood of success on their Title IX claim or that Jones can succeed on his Title VII claim. For these reasons, the Court will not preliminarily enjoin the enforcement of H.B. 264 against these Plaintiffs pending the outcome of the case.

### III. BACKGROUND

During the 2025 legislative session, the Idaho Legislature passed H.B. 264—codified at Idaho Code § 67-9801, et. seq.—which requires, among other things, that all multi-occupancy restrooms in Idaho's universities be designated "male," or "female," and must only be used by members of "that sex." Idaho Code § 67-9802(2). Sex is defined as "an individual's biological sex, either male or female." Idaho Code § 67-9801(10) (stating the definition of "sex" is the same as in Idaho Code § 73-114(n)). The text of H.B. 264 states it was enacted to protect the privacy and safety of women.[1]

H.B. 264 also requires that universities provide "a reasonable accommodation to any student or employee who: (i) for any reason, is unwilling or unable to use a multi-

---

[1] Two years ago, the Idaho Legislature passed S. B. 1100, which required, among other things, that K-12 public schools have sex-segregated restrooms, locker rooms, and overnight accommodations. The constitutionality of S.B. 1100 was challenged and the challengers sought a preliminary injunction. The undersigned presides over that case. It previously found the Plaintiffs were not likely to succeed on their claims and denied preliminary relief. *Roe v. Critchfield*, 2023 WL 6690596 (D. Idaho Oct. 12, 2023). The Ninth Circuit affirmed. *Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025). The Court recently denied a second motion for preliminary injunction in that case. *SAGA v. Critchfield*, 2025 WL 2256884 (D. Idaho Aug. 7, 2025). That matter is again on appeal. H.B. 264 is, for lack of a better term, a follow-up effort to capitalize on S.B. 1100's efforts and protect privacy—especially for women and girls—at colleges and universities.

occupancy restroom . . . designated for the person's sex . . . ." Idaho Code § 67-9802 (6)(a)(i). Governor Little signed H. B. 264 on April 1, 2025, and H.B. 264 took effect on July 1, 2025.

Plaintiff Altas Jones is a transgender man and incoming sophomore at Boise State University ("BSU"). BSU also hired Jones as a math tutor this fall. Jones has always used men's restrooms on campus, consistent with his gender identity and physical appearance.

Plaintiff Sophie Smith is a transgender woman at the University of Idaho ("U of I"). Smith has always used the women's restrooms on campus, consistent with her gender identity and physical appearance.

On July 25, 2025, Plaintiffs filed suit alleging H.B. 264 is unconstitutional on its face and as applied to them because it violates the Equal Protection Clause and their Right to Privacy under the Fourteenth Amendment, and further, that it violates Title VII and Title IX of the Civil Rights Act of 1964. *See generally* Dkt. 1, at 21–28.

 Alongside their Complaint, Plaintiffs filed a Sealed Motion for Preliminary Injunction (Dkt. 11) and a Motion to Seal and to Proceed Anonymously (Dkt. 12). In their Motion for Preliminary Injunction, Plaintiffs request a very narrow injunction—just for the two of them and just as applied to restrooms—pending the Court's consideration of the case on the merits. In the Motion to Seal and to Proceed Anonymously, Smith asks that the Court allow her to proceed anonymously and that she be allowed to file various documents under seal because they contain identifying and/or confidential information.

Because Plaintiffs' Preliminary Injunction sought relief prior to the start of the new academic year on August 25, 2025—and that day was but 30 days out from their original

filing—the Court expedited briefing on the motions and set the matter for a hearing. Dkt. 17. The hearing date and briefing schedule were modified slightly to accommodate defense counsel's schedule. Dkt. 24.

Defendants subsequently responded in opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. 29) and also moved the Court for an order allowing them to file a declaration in support of their response under pseudonym (Dkt. 30).[2] Defendants also partially opposed Plaintiffs' Motion to Seal and to Proceed Anonymously. Dkt. 28. Specifically, Defendants aver Plaintiffs must at least tell them (and the Court) Sophie Smith's true identity so they can test the sufficiency of her allegations, but leave to the Court's discretion whether to allow Smith to proceed anonymously in the litigation and whether she can file any documents under seal. *See generally id*.

Plaintiffs replied (Dkts. 31,33),[3] and, as mentioned, the Court held a hearing on August 15, 2025, and took the matters under advisement.

### IV. LEGAL STANDARD

Injunctive relief "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22, (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A party seeking a preliminary injunction must establish: (1) a likelihood of success on the merits; (2) likely irreparable harm in the absence of a preliminary injunction; (3) that the balance

---

[2] Plaintiffs did not formally respond to Defendant's Motion to File Declaration Under Pseudonym.

[3] Plaintiffs filed a Second Motion to Seal asking the Court to allow them to file their reply brief under seal because it contained more confidential and identifying information about Smith. Dkt. 36. Defendants did not formally respond to Plaintiffs' Second Motion to Seal.

of equities weighs in favor of an injunction; and (4) that an injunction is in the public interest. *Id*. at 20. Where, as here, "the government is a party, these last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

<strong>V. ANALYSIS</strong>

The Court will begin with the procedural motions and then turn to the substantive Motion for Preliminary Injunction.

### A. Motion to Seal and Proceed Anonymously (Dkt. 12) and Second Motion to Seal (Dkt. 36)

Smith seeks an order from the Court allowing her to: (1) proceed anonymously in this litigation, and (2) file certain documents under seal.

Smith does not want to proceed under her real name for privacy and safety concerns. She also seeks to file certain information about herself under seal because she is concerned the dissemination of too much personal information could lead to her identity being revealed. That would necessarily result in the disclosure of her transgender status and medical diagnosis of gender dysphoria to the public—something she wishes to avoid. *See* Dkt. 12-1, at 6.

Defendants do not oppose Smith's motion in practice—at least where the public is concerned. They admit the Ninth Circuit has a "lenient approach to pseudonyms" and also that this Court has allowed such a procedure in the past. Dkt. 28, at 2. Defendants do object, however, to Smith shielding her identity from them and the Court, noting they need to

know her identity to be able to "test the truth of [her] allegations." *Id*.[4]

The Court finds there is good cause to allow Smith to proceed anonymously and to allow her to shield some of her personally-identifying information from the public. Although most court proceedings are fully open and accessible to the public, there are circumstances, such as those present here, where minor restrictions are necessary. The Court finds Smith could face stigmatization, harassment, disclosure of her confidential medical information, and retaliation if her identity is disclosed.

Thus, the Court will allow Smith to proceed via pseudonym and will allow her opening and reply briefs to remain under seal. There is little prejudice to Defendants or the public where, as here, "[t]he great bulk of [a] case will be on the public record," including "[t]he basic facts of . . . the defendants' challenged conduct, the court's reasoning, and the resulting interplay of those things." *Jane Roes 1-2 v. SFBSC Mgmt., LLC*, 77 F. Supp. 3d 990, 993 (N.D. Cal. 2015). Further, to date, Plaintiffs have filed redacted copies of all sealed documents, thus allowing the public as much access as possible. Smith's Motions to Seal (Dkts. 12, 26) are accordingly GRANTED.

### B.  Motion to File Declaration Under Pseudonym (Dkt. 30)

Like Smith's Motion, Defendants seek to file the declaration of "A.H." under a pseudonym because A.H. fears retaliation and harassment if her identity is publicly disclosed. *See generally* Dkt. 30-1.

A.H. is an incoming freshman at the U of I and holds "traditional views" about

---

[4] The Court is aware from informal communications that Plaintiffs have now disclosed Smith's identity to Defendants.

transgender legislation—including that restrooms should be separated based on sex. Dkt. 30-1, at 3. A.H. fears if she files her declaration under her real name, she could face recrimination from fellow students and professors. Dkt. 29-15, at 3.

Plaintiffs have not taken a position on Defendants' Motion.

The Court finds A.H. has articulated a legitimate reason for using a pseudonym. As the Court noted above, while the public disclosure of the identities of those involved in Court proceedings is the norm, there are circumstances that warrant anonymity. This is one such situation. Further, there is no reason for Plaintiffs to learn A.H.'s identity because she is not a party to this suit. If, however, Plaintiffs simply want to verify that A.H. is a student at the U of I, the Court will likely require that Defendants disclose her identity to Plaintiffs' counsel. Defendants' Motion (Dkt. 30) is GRANTED.

### C. Motion for Preliminary Injunction (Dkt. 11)

*1. Likelihood of Success on the Merits*

a. <u>Equal Protection</u>

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The state may not discriminate against classes of people in an "arbitrary or irrational" way or with the "bare . . . desire to harm a politically unpopular group." *Id.* at 446–47.

When considering an equal protection claim, the Court must first determine the

appropriate level of scrutiny to apply, and then decide whether the law, statute, or policy at issue withstands that level of scrutiny.

There are three levels of review: strict scrutiny, intermediate scrutiny, and rational basis review. Laws are subject to strict scrutiny when they discriminate against a suspect class, such as a racial group, *e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003), or when they discriminate based on any classifications that impact a fundamental right, such as the right to vote. *E.g., Reynolds v. Sims*, 377 U.S. 533, 562 (1964). Laws are subject to intermediate (or heightened)[5] scrutiny when they discriminate based on certain other suspect classifications, such as gender. *Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 723 (1982). When no suspect class is involved and no fundamental right is burdened, courts apply a rational basis test to determine the legitimacy of the classification. *Olagues v. Russoniello,* 770 F.2d 791, 802 (9th Cir.1985).

The parties disagree on the appropriate level of scrutiny the Court should apply in this case. This disagreement hearkens back to a fundamental question the Court has grappled with before: what distinction does the challenged statute draw? Is it based on sex or gender identity/transgender status?

The Court held in *Roe v. Critchfield* that S.B. 1100 was based on sex, not gender identity or transgender status, because the definition of "sex" does not inherently include gender identity. 2023 WL 6690596, at *7 (D. Idaho Oct. 12, 2023), *aff'd*, 131 F.4th 975

---

[5] *See Clark v. Jeter*, 486 U.S. 456, 463–465 (1988) (referring to intermediate scrutiny as "heightened scrutiny" in the equal protection context, which similarly distinguishes between three levels of scrutiny— strict, heightened, and rational basis).

(9th Cir. 2025), and *aff'd sub nom. Roe v. Critchfield*, 137 F.4th 912 (9th Cir. 2025). The Court noted, however, that whether the law was based on sex or transgender status did not ultimately matter because intermediate scrutiny applied either way. *Id.*

On appeal, the Ninth Circuit agreed with the Court that S.B. 1100 was based on sex, but also held S.B. 1100 was based on transgender status. *Roe v. Critchfield*, 137 F.4th 912, 922–23 (9th Cir. 2025).[6] Again, however, this legal disagreement aside, both the Ninth Circuit and this Court determined intermediate scrutiny was the appropriate level of scrutiny to apply.

Here, Plaintiffs—relying on the Ninth Circuit's decision in *Roe*—argue H.B. 264 is based on transgender status because it does not prevent cisgender people from using restrooms that align with their gender identity; it only bars transgender people from using restrooms that align with their gender identity. But again, to reach this conclusion, one must assume gender identity is part of the definition of sex. As the Court outlined in *Roe*, however, the definition of sex—from a legal and statutory standpoint—has never included "gender identity" or "transgender status." *Roe*, 2023 WL 6690596, at *6 n.8.

Similarly, as they previously argued in *Roe*, here Defendants argue H.B. 264 is

---

[6] The Ninth Circuit explained the plaintiffs in *Roe* argued that "intermediate scrutiny is warranted for the additional reason that S.B. 1100 only changed the status quo for transgender students." *Roe*, 137 F.4th at 922–23. In response to this position, the Ninth Circuit held:

> We agree that the passage of S.B. 1100 does not prevent cisgender students from using restrooms, locker rooms, shower rooms, and overnight accommodations that align with their gender identity; it bars only transgender students from using facilities that align with their gender identity. Thus, under our precedent and the precedent of other circuits, S.B. 1100 discriminates on the basis of transgender status as well as on the basis of sex.

*Id.*

MEMORANDUM DECISION AND ORDER – 10

based on sex[7] because it applies a restriction equally to both sexes, i.e., both sexes may only use the restroom that corresponds to their biological sex.

The Court can see both perspectives, which depend on how one defines the terms. While reasonable minds can differ, the Court maintains the same position it outlined in *Roe*. The Court accordingly finds H.B. 264 is based on sex because "sex" is a legal and statutory term with defined bounds.[8] And those bounds do not include "gender identity" or "transgender status." Moreover, "sex," and not "gender identity," or "transgender status," is the term that has been consistently held to be part of a protected class.

This brings the Court to a final point—*United States v. Skrmetti*— a case in which the United States Supreme Court recently issued a decision dealing with a Tennessee statute related to puberty blockers and hormone therapy. 145 S. Ct. 1816 (2025). The Supreme Court held that Tennessee's prohibition on such medical processes for treating gender dysphoria, gender identity disorder, or gender incongruence in minors was constitutional. Relevant here, the Supreme Court found that rational basis review applied because the statue was based on medical necessity and age, not sex—even though, as here, the relevant statute referenced sex. *Id*. at 1829.

---

[7] Defendants initially seemed to acknowledge H.B. 264 is based on sex (Dkt. 29, at 2), but later argue rational basis review applies because H.B. 264 is not based on "sex or transgender status." Dkt. 29, at 8.

[8] A simple example may help illustrate the Court's point. If a cisgender man wanted to use the women's restroom for whatever reason (e.g. because it was cleaner), he would not be allowed to because he is male. Similarly, if a cisgender woman wanted to use the men's restroom for whatever reason (e.g. because the line for the men's restroom is typically shorter) she would not be allowed to because she is female. Such restriction is based purely on biological sex. The fact that people who identify as transgender also fall under those biological sex-based categories does not mean the statute then discriminates on transgender status. Said another way, that the category of "biological sex" could include people with other categorical features does not automatically transform the distinction of H.B. 264 from sex to those other categories or features.

Defendants argue *Skrmetti* abrogated the Ninth Circuit's holding in *Roe* that S.B. 1100 is based on transgender status (and warrants heightened scrutiny). This, Defendants argue, means the Court should apply only rational basis review to H.B. 264. The Court recently rejected Defendants' argument that *Skrmetti* abrogated the Ninth Circuit's holding in *Roe* with respect to this very issue. *SAGA v. Critchfield*,[9] 2025 WL 2256884, at *5–*6 (D. Idaho Aug. 7, 2025). The Court is of the opinion that, while the issue of transgender status as a suspect or quasi-suspect class is likely changing—and will hopefully be addressed by the Supreme Court in its upcoming term—*Roe* is not "clearly irreconcilable"[10] with *Skrmetti* so as to abrogate its holding on this topic.

Defendants go further than claiming *Skrmetti* abrogates *Roe* and simply reinforces their position this case is based on "sex" and not "transgender status" by arguing H.B. 264 is not based on sex at all and rational basis review is all that is required. Dkt. 29, at 8. But Defendants do not explain what classification, if any, H.B. 264 is based upon (if not sex).

Thus, as the Court recently held in *SAGA,* while it may disagree with the Ninth Circuit about whether these laws are based on sex or transgender status—and the ground is currently shifting on these questions—it does not ultimately matter because intermediate scrutiny is, regardless, the appropriate level of review. *SAGA*, 2025 WL 2256884, at *6.

Having determined intermediate scrutiny is the appropriate level of review, the

---

[9] *SAGA v. Critchfield* is the same case as *Roe v. Critchfield*. Plaintiff Roe was dismissed during the first appeal. Thus, the newer opinions have the "SAGA" nomenclature while the older opinions remain "Roe."

[10] Published opinions of the Ninth Circuit are binding unless "clearly irreconcilable" with higher authority. *In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013). As outlined, the Court is not confident the Ninth Circuit's opinion in *Roe* is "clearly irreconcilable" with *Skrmetti*.

Court turns next to Defendants' asserted justifications for H.B. 264 and whether H.B. 264 is substantially related to such interests as applied to Jones and Smith.[11] Defendants' identified interests in H.B. 264 are the same as those proffered in *Roe*—safety and privacy.

(i)    *Safety*

As for safety, the Court continues to find this argument minimally persuasive. Defendants posture bills like H.B. 264 prevent sexual harassment and assault. They identify a few cases or news articles illustrating unfortunate situations occurring in women's restrooms on college campuses. Notably, the attacks are, for the most part, perpetrated by cisgender men; although occasionally a female has been attacked by a transgender man in a women's restroom.[12] But there is no indication any such thing has ever happened in Idaho. This Court and the Ninth Circuit already noted that safety was not a persuasive justification in *Roe*. *Roe*, 137 F.4th at 924 n.8. *SAGA*, 2025 WL 2256884, at *7.

In fact, even the sponsors of H.B. 264 admit they were unaware of any safety issues on campuses during the 2024 calendar year involving transgender individuals using the restrooms associated with their chosen gender identity. *See* Dkt. 11-1, at 11. In short, the Court finds Defendants' safety argument is unpersuasive.

---

[11] As will be discussed in greater detail momentarily, the Court has struggled with the as-applied nature of this challenge. It also struggled with the most logical and appropriate place to include that discussion so as not to interrupt the flow or appear as if it simply made a facial determination and then imputed that same reasoning to Plaintiffs' as-applied challenge. The Court has elected to explain Plaintiff's as-applied challenge *after* discussing Defendants' justifications for H.B. 264 to illustrate how such justifications apply specifically to Jones and Smith. *See* Section (C)(1)(a)(iii).

[12] In not so many words, Plaintiffs dispute the comparison because, as transgender people, they are not in the same category as the cisgender individuals who committed most of these crimes. Still, they are in the same category in the sense that both seek access to restrooms that do not align with their biological sex.

*(ii)    Privacy*

Privacy, however, continues to be the most relevant factor in the Court's analysis, and it is this justification Defendants continue to successfully tie directly to the enacted statute—even as applied to just two people.

Individuals have a constitutional right to bodily privacy. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). "[S]hield[ing] one's unclothed figure from the view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Byrd v. Maricopa Cnty. Sheriff's Dep't.*, 629 F.3d 1135, 1141 (9th Cir. 2011).

Separating restrooms by biological sex to reflect such privacy goals has been common for centuries. *See Adams by and through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 796 (11th Cir. 2022) (en banc) (noting separating school bathrooms based on biological sex is "unremarkable—and nearly universal . . . "). And for good reason—there are biological differences between men and women. *Id*. at 809; *see also United States v. Virginia,* 518 U.S. 515, 533 (1996) (noting that "physical differences between men and women [ ] are enduring" and "the two sexes are not fungible . . . ." (cleaned up)).

Further, as the Court recently noted, privacy in restrooms is not limited to ensuring that another person cannot see into the stall a person is using to relieve themselves. *SAGA*, 2025 WL 2256884, at *8. Individuals undertake other personal duties in the communal areas of restrooms and are entitled to privacy there as well.

The enduring biological differences between men and women are unique and deserving of privacy. It does not matter that the person of the opposite biological sex

MEMORANDUM DECISION AND ORDER – 14

(whether presenting as transgender or cisgender) is not affirmatively "looking" or seeking out other people in the restroom. Even having to share a multi-occupancy restroom with a person of the opposite sex can be an invasion of privacy and make a person feel uncomfortable.[13] *See* Dkt. 29, at 15.

In sum, H.B. 264's segregation of restrooms based on sex is substantially related to the State's valid interest in protecting the privacy of women and girls. And—as explained in the following section—this is so *even as applied to just Jones and Smith*. For this reason, Plaintiffs appear unlikely to succeed on the merits of their Equal Protection claim.

### (iii)    *As-Applied*

The most vexing question in this case is how exactly to evaluate Plaintiffs' as-applied challenge and whether H.B. 264 should be enforced *specifically* as to them.

In their Complaint, Plaintiffs contend that H.B. 264 "*facially* and intentionally discriminates against transgender people like Plaintiffs." Dkt. 1, at 21 (emphasis added). But Plaintiffs' causes of action are framed "*as applied to* their ability to use restrooms aligning with their gender identity." *Id*. at 3, 21, 26, 28, 29 (emphasis added). Plaintiffs' briefs confirm this is an as-applied case, as the present motion raises an as-applied challenge to the enforcement of H.B. 264.

---

[13] The Court is fully aware—and has noted before—that in upholding H.B. 264 to protect the privacy of some, it may have a ripple effect and cause privacy concerns elsewhere. For example, if Plaintiffs choose not to avail themselves of H.B. 264's accommodation and use a single-occupancy restroom, they will be using a restroom that does not coincide with their gender identity and physical appearance. This could make them and/or those in *that* restroom uncomfortable. The aspirational promises of the Fourteenth Amendment, however, must coexist with the practical reality that laws often draw lines between groups of people, and those lines may naturally prove advantageous to some groups while disadvantaging others. *See Romer v. Evans*, 517 U.S. 620, 631 (1996).

To quickly review, facial challenges seek to have a statute declared unconstitutional "on its face." This standard presents an extremely high bar because a plaintiff must show that the statute is unconstitutional in all possible applications and situations. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). As-applied challenges, on the other hand, are narrower than facial challenges and argue that even if a law is valid on its face, it may nonetheless be unconstitutional when applied in a particular case. *See Tsirelman v. Daines*, 19 F. Supp. 3d 438, 447–48 (E.D.N.Y. 2014), *aff'd*, 794 F.3d 310 (2d Cir. 2015).

The problem, however, is that facial and as-applied challenges "do not enjoy a neat demarcation . . . ." because there is a disconnect between what the Supreme Court has mandated and what happens in practice. *See Standing--Facial Versus As Applied Challenges--City of Los Angeles v. Patel*, 129 Harv. L. Rev. 241, 246–47 (2015) (quoting Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*, 99 Cal. L. Rev. 915, 923 (2011)); *see also* Gillian E. Metzger, *Facial Challenges and Federalism*, 105 Colum. L. Rev. 873, 882 (2005).

Moreover, as-applied challenges can present something of a "Catch-22." As one commentator has observed:

> Sometimes it is said of a statute which is not void 'on its face' that it nevertheless is invalid as applied. This is a malapropism, however, for a provision which is only invalid as applied in the facts of a particular case is possibly capable of valid application in another fact situation. In reality, it is only the implementing action which purports to apply the legislation and not

the provision itself which is invalid in such cases.

1 Norman J. Singer, Statutes and Statutory Construction §2:6, at 44 (6th ed. 2002) (cleaned up).

The Court reviews this commentary because the as-applied framework is one of its greatest concerns in this case. The Court is cognizant of its duty to review Plaintiffs' challenge as-applied to them without regard for others. But what exactly does that mean? Plaintiffs contend it means the Court needs to look at solely whether Jones and Smith are a danger to society or would infringe on other people's privacy—since those are the States' justifications for H.B. 264—and determine whether there is a logical connection between the statute and them. The Court *tends* to agree, but this whole situation is quite nuanced because, as just noted, the validity of H.B. 264 could still stand even against a persuasive as-applied challenge because the inquiry turns more on a question of implementation as opposed to the statute's general constitutionality.

The Court is not trying to split a hair too finely. Further commentary may assist.

For instance, Plaintiffs cite *Doe v. Horne* in support of the idea that Defendants must show H.B. 264 "directly advance[s] the State's legitimate objectives as applied to [Plaintiffs]" and that Defendants cannot do this by showing the law "advances legitimate State interests as applied to" other people. Dkt. 33, at 2 (citing *Doe v. Horne,* 115 F.4th 1083, 1110 (9th Cir. 2024). In *Horne*, transgender female athletes challenged Arizona's "Save Women's Sports Act," which categorically precluded transgender female students from playing on girls' sports teams. In affirming the District Court's grant of a preliminary

injunction against the law—and relying heavily on its own decision in *Hecox v. Little*[14]—the Ninth Circuit explained that the plaintiffs had proven a likelihood of success on the merits because they had shown the law *only* targeted transgender girls and women.[15] The Ninth Circuit rejected Arizona's argument that because the statute achieved its objective of protecting women's sports in *some* circumstances, the statute could still be upheld as constitutional. *Horne*, 115 F.4th at 1110.

In reaching its conclusion, the Ninth Circuit noted the defendants had "correctly" pointed out that "none of the Supreme Court's gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance," but it nevertheless found defendants had not carried their burden because they failed to show the statute was passed "in *substantial furtherance* of important governmental objectives." *Id*. (citing *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 70 (2001) (cleaned up, italics in original).

The present case, however, is slightly different. In *Horne*, the Ninth Circuit noted—as did this Court in *Hecox*—that the statute singled out transgender girls and women. In both cases, the statute at issue did not apply to transgender boys and men. Thus, the very nature of statute was discriminatory, which led to discriminatory implementation.[16]

---

[14] 104 F.4th 1061, 1080 (9th Cir. 2024), as amended (June 14, 2024), cert. granted, No. 24-38, 2025 WL 1829165 (U.S. July 3, 2025).

[15] Also of note, the Ninth Circuit in *Horne* was reviewing the Arizona District Court's evidentiary findings related to puberty and hormone treatment, and whether excluding transgender girls and women from sports regardless of whether they had gone through puberty or hormone treatment still aligned with the defendants' stated interest in passing the law. *Horne*, 115 F. 4th at 1109. The Ninth Circuit's determination was, therefore, very specific to the facts of that case.

[16] Now, as the Court later observed in *Roe*, it is not implying a statue can pass constitutional muster so long as it "discriminates equally." *Roe*, 2023 WL 6690596, at *12. However, this distinction illustrates why this

That is not the case here. H.B. 264 applies to all people (including all men and women, whether cisgender or transgender). And there is no doubt Jones and Smith fall into the category of persons H.B. 264 seeks to exclude—persons who want to use the restroom that is different from their biological sex—because both admit they are transgender.

The Court appreciates Plaintiffs' citation to *Horne* and the Ninth Circuit's holding there that, under heightened scrutiny, defendants could not simply show the challenged statute achieved the State's goal in *some* instances. But after identifying this supposedly flawed reasoning, the Ninth Circuit held the State needed to show the challenged statute was "in *substantial furtherance* of important governmental objectives." *Horne*, 115 F. 4th at 1110 (emphasis is original). Candidly, the Court does not know how to reconcile the distinction the Ninth Circuit attempted to illustrate in *Horne*. Presumably, the Ninth Circuit has not held defendants must show a law is constitutional in all cases to withstand both intermediate scrutiny and an as-applied challenge. After all, the *Horne* Court noted defendants had "correctly" cited to a Supreme Court case that held a statute such as H.B. 264 did not have to achieve its ultimate objective in "every instance." *Id.* (citing *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 70 (2001)).[17]

---

Court (in *Hecox*) and the Ninth Circuit (in *Horne*) found each State's purported interest did not seem to line up squarely with the law that was passed—because it impermissibly drew a line between men and women, and transgender men versus transgender women, in the statute itself. Of course, due to the innate physical differences between the sexes, allowing transgender women to participate in women's sports could pose far more of a threat to women's sports than would allowing transgender men to participate in men's sports. Thus, the fact that these laws were directed at women's sports and, in turn, applied solely to transgender women is understandable. But from an equal protection standpoint, multiple courts (including this Court) have found that statutory framework problematic.

[17] Plaintiffs also cite to this Court's holding in *United States v. Garibay*—a criminal case—where the Court observed that, because "there will always be situations in which the wide net of a statute captures a person who arguably should not be included in its grasp," "that is precisely why as-applied challenges are allowed". No. 1:19-CR-00093-DCN, 2021 WL 982615, at *4 (D. Idaho Mar. 16, 2021). In that case, the

This returns the Court to the confusing nature of the as-applied framework in this specific case. If the Ninth Circuit agrees that "none of the Supreme Court's gender-based classification equal protection cases have required that the statute under consideration must be capable of achieving its ultimate objective in every instance," then what is the point of an as-applied challenge? *Horne*, 115 at 1110.[18] Ultimately, the Court understands Plaintiffs' citation to *Horne* but is, nevertheless, left with as many questions as answers.[19]

The Court and the parties discussed this challenge in some detail at the hearing. The Court appreciates counsel's explanations and case citations. But the Court is still not entirely sure—as other courts have observed—that the as-applied framework can save Plaintiffs' claims because the State has an interest in prohibiting people from entering restrooms that do not match their biological sex. That means, inherently, the State has an interest in prohibiting *these two people* from using the restroom not associated with their biological sex. The State has this interest not because Jones and Smith specifically may endanger others, nor because they will affirmatively invade another's privacy, nor simply because they are transgender. Instead, the State has an interest in enforcing H.B. 264 even with respect to Jones and Smith because doing so serves the State's fundamental privacy

---

Court held the petitioner had not raised a successful facial or as-applied challenge. The Courts finds *Garibay* is not as relevant to the present issues as *Horne* and other cases dealing with equal protection challenges.

[18] The Court recognizes that gender-based classifications, sex-based classification, and gender identity/sexual orientation classifications are not necessarily synonymous. But the principle is still relevant.

[19] For instance, should the Court consider the specific individuals and whether they fit the definition of prohibited conduct under the statute—which they surely do in this case—or should it consider whether regulating specific individuals meets the end goals of the statute?

interest in requiring individuals to use the restroom that aligns with their biological sex.[20]

In other words, regardless of Plaintiffs' motivations or individual circumstances,[21] the State *still* has a valid interest in prohibiting *them* from using the restrooms associated with their gender identity because doing so would violate the statute and undermine the rational of keeping the biological sexes separated in restrooms for privacy purposes.[22]

In sum, the Court finds Plaintiffs have not carried their burden and shown they are likely to succeed on the merits of their equal protection claim. The Court is not convinced—even when considering solely the two Plaintiffs—that they are likely to prevail on their equal protection claim because the State can still show applying H.B. 264 to Jones and Smith is in substantial furtherance of its objectives of protecting the privacy of the sexes.

b. Title IX

Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

---

[20] If the Court were to allow every transgender person to simply demonstrate he or she was not a danger to others or not a privacy threat and hold H.B. 264 did not apply to that person, such would essentially allow the exceptions to swallow the State's fundamental privacy interest in passing the statute in the first instance.

[21] As Defendants noted at the hearing, Plaintiffs do a good job of focusing the Court's attention on them, but H.B. 264 focuses more on the public. The Court's explanation in *Roe* is apropos here:

> The issue is not whether any transgender [person] has affirmatively done anything—good, bad, or otherwise—to another [person]. The issue is whether a [person] must, against his or her wishes, be forced to change (or undertake other private duties) in the presence of someone of the opposite sex—even if the person of the opposite sex is doing nothing invasive, dangerous, or threatening.

*Roe*, 2023 WL 6690596, at *10.

[22] Notably, while Plaintiffs also have a privacy interest in using the restroom associated with their gender identity, this interest is protected through H.B. 264's requirement that individual restrooms be made available so transgender individuals need not use group bathrooms which do not align with their gender identity. The same cannot be said for allowing Jones and Smith—or any other individuals who bring as-applied challenges—to avoid H.B. 264 and use the group restroom which aligns with their gender identity.

MEMORANDUM DECISION AND ORDER – 21

under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The corresponding code sections implementing Title IX also outline that educational institutions "may provide separate toilet, locker room, and shower facilities on the basis of sex," so long as the facilities "provided for students of one sex [are] comparable to [the] facilities provided for students of the other sex." 34 C.F.R. § 106.33.

The Court previously held that Title IX permits sex-segregated restrooms based on its conclusion that "sex," as defined in Title IX, has never included sexual orientation or gender identity. *Roe*, 2023 WL 6690596, at *15. The Ninth Circuit did not disturb this holding on appeal. To be sure, the Ninth Circuit found it "need not reach" that specific question because an alternative argument—based on funding—resolved the issue. *Roe*, 137 F.4th at 928. But the Court finds no reason to deviate from its prior holding here. Title IX—via its implementing regulations—includes restrooms, and the definition of "sex" does not include gender identity or sexual orientation.[23]

Moreover, even assuming arguendo that a different analysis should apply on this topic given the facts of this case, the Ninth Circuit's holding as to the Spending Clause would still apply.[24] Plaintiffs have failed to show Defendants had "adequate notice, when they accepted federal funding, that Title IX prohibits the exclusion of transgender [people]

---

[23] Plaintiffs argue the Ninth Circuit's amended decision in *Roe* clarifies this issue and supports their argument here. *Roe*, 137 F.4th at 918–19. This, however, is the same argument Plaintiffs recently made in *SAGA*, and which the Court rejected. Simply put, the Court does not share Plaintiffs' interpretation and enthusiasm for the Ninth Circuit's amended language. *See SAGA*, 2025 WL 2256884, at *9 n.17.

[24] Plaintiffs half-heartedly argue the Spending Clause theory does not apply in this case. Dkt. 33, at 8. However, in addition to the Ninth Circuit finding this concept applicable in *Roe,* it also noted that the District Court in *Horne* should address the issue as it appeared likely to be applicable there as well. *Horne*, 115 at 1110–11.

from restrooms . . . corresponding to their gender identity." *Roe*, 137 F.4th at 929. For these reasons, the Court finds Plaintiffs are unlikely to succeed on the merits of their Title IX claim.

c. Title VII

Title VII, 42 U.S.C. § 2000 *et seq.*, prohibits employment discrimination on account of "race, color, religion, sex, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting 42 U.S.C. § 2000e–2(a)(1)).

Jones claims H.B. 264 violates Title VII because it denies him access to a restroom consistent with his gender identity, and that this denial constitutes sex discrimination. Defendants counter that Jones cannot succeed on the merits of his Title VII claim, but more fundamentally that he failed to exhaust his administrative remedies as statutorily required.

*(i)    Exhaustion*

In order to file a Title VII suit, a plaintiff must first file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 383 (9th Cir. 1997); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). By statute, such a charge must be filed within 180 days "*after the alleged unlawful employment practice occurred.*" 42 U.S.C. 2000e-5(b), (e)(1) (emphasis added). If the EEOC dismisses the charge, a claimant has ninety days to file a civil action. 42 U.S.C. § 2000e-5(f)(1). If a claimant fails to file the civil action within this ninety-day period, the action is barred. *Scholar v. Pacific Bell*, 963 F.2d 264, 266–67 (9th Cir. 1992) (stating this period constitutes a statute of limitations).

Defendants begin by noting Jones is not currently employed at BSU. Because Title

VII only applies to the employee-employer relationship *and* because a charge of discrimination cannot be filed with the EEOC until *after* the alleged discrimination occurs, Defendants allege Title VII is inapplicable at this time or, at the very least, that Jones is too early and has not exhausted his administrative remedies.

Jones alleges he filed a charge with the EEOC on July 24, 2025—the day before he filed this suit. At the hearing on August 15, counsel represented that Jones recently received his right-to-sue letter from the EEOC. Beyond that, Jones contends he was never required to exhaust his remedies before seeking a preliminary injunction because of the unique circumstances of this case. Dkt. 11-1, at 20 n.5; Dkt. 33, at 8–9. The case Jones cites in support of the latter position does state the "law of the circuit is that in a limited class of cases a district court has jurisdiction to grant a preliminary injunction in a Title VII case before the completion of the administrative process in order to maintain the status quo." *Duke v. Langdon*, 695 F.2d 1136, 1137 (9th Cir. 1983) (cleaned up).

The Court agrees the timing issues in this case present a unique circumstance and, as a result, Jones was not required to exhaust his administrative remedies *before* bringing his Title VII claim.[25]

(ii)    *Merits*

That said, Jones does not appear likely to succeed on the merits of this claim because

---

[25] A similar analysis applies to Defendants' companion argument that Jones must be employed by BSU and then wait an addition 180 days before filing a charge with the EEOC. Such a procedure would be extremely time-consuming and run counter to principles of judicial economy. As the Court has observed elsewhere, there are circumstances when a Plaintiff need not wait until they are harmed to initiate suit. *See, e.g., Idaho Fed'n of Tchrs. v. Labrador,* 2024 WL 3276835, at *8 (D. Idaho July 2, 2024) (discussing that a person need not risk prosecution before challenging a law). That general principle rings true here.

Title VII does not explicitly prohibit sex-segregated restrooms.

This question presents an extremely detailed and tricky analysis which begins with the Supreme Court's decision in *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020). But for the Court's purposes today, the analysis also ends with *Bostock*.

In *Bostock*, the Supreme Court held, among other things, that discrimination "because of" sexual orientation is a form of sex discrimination under Title VII. *Id.* at 646. Importantly, as the Court noted in *Roe*, even having thus concluded as to Title VII, the Supreme Court *did not* change the underlying definition of sex which was "determined by reproductive biology." *Bostock*, 590 U.S. at 655. The Supreme Court also emphasized the "biological distinctions between male and female" and that "homosexuality and transgender status are distinct concepts from sex." *See Roe*, 2023 WL 6690596, at *7 (citing *Bostock*, 590 U.S. at 644, 669). Moreover, the Supreme Court explicitly held that "[u]nder Title VII, too, we do not purport to address bathrooms, locker rooms, or anything else of the kind." *Id.* at 681.[26]

As outlined, Title VII prohibits discrimination in the workplace based on sex. 42 U.S.C. § 2000e-2. To "'discriminate against' a person . . . mean[s] treating that individual worse than others who are similarly situated." *Bostock*, 590 U.S. at 657. Thus, a violation of Title VII will only be found if an employer takes an adverse employment action, treats an employee worse than another similarly situated employee, and the employee's sex is the "but-for" cause of the worse treatment. *Id.* at 656, 658.

---

[26] One court recently invalidated the EEOC's guidance that sex-segregated restrooms *violated* Title VII. *Texas v. Equal Emp. Opportunity Comm'n*, 2025 WL 1414332, at *11 (N.D. Tex. May 15, 2025).

Jones has not shown that sex-segregated restrooms violate Title VII. Again, sex—in the context of Title VII—is based on biological sex. H.B. 264 prohibits individuals from using the restroom of the opposite sex and this restriction does not change based on sex. In other words, if Jones were a biological male, he would still be prohibited from using the restroom of the opposite sex. Thus, his sex is not the but-for cause of the alleged discrimination.

Whether Title VII prohibits sex-segregated restrooms is a complex and novel legal issue. For its part, the Court stands behind its comments here and in other decisions that unless and until the Supreme Court redefines "sex" to include sexual orientation or gender identity—or otherwise applies its holding in *Bostock* to restrooms and other such facilities—sex-segregated restrooms do not violate Title VII.

For this reason, the Court finds Jones is unlikely to succeed on the merits of his Title VII claim.

d. Conclusion

Having concluded Plaintiffs are unlikely to succeed on their claims, the Court could stop its analysis here. *See, e.g., Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) ("Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors . . . ." (cleaned up)); *Conservation Cong. v. U.S. Forest Serv.*, 720 F.3d 1048, 1058 (9th Cir. 2013) (affirming district court's denial of a preliminary injunction based only on review of the lack of a likelihood of success on the merits). That said, the Court will discuss the remaining factors briefly as each also supports the Court's denial of Plaintiffs' Motion.

2. *Irreparable Harm*

Plaintiffs argue that they will suffer irreparable harm in the absence of an injunction. They first posture that *any* constitutional violation constitutes per se irreparable harm. The Court does not disagree. But, as outlined above, Plaintiffs are not likely to prevail on their claim that a constitutional deprivation has occurred.

Plaintiffs also suggest they will suffer harm because H.B. 264 will increase their mental and physical suffering by forcing them to use a restroom with people different from them. As previously noted, any concerns on this issue can be mitigated, however, because Plaintiffs can use the many single-occupancy restrooms on campus. Plaintiffs do not like this idea, explaining they run the risk of disclosing their transgender status by using a single-occupancy restroom. This does not appear likely because people of either gender use single-occupancy restrooms. The Ninth Circuit rejected a similar argument in *Roe*. *Roe*, 137 F.4th at 932 ("Because the statute does not limit the use of single-occupancy facilities to only transgender students, we cannot say on the existing record that observing a student accessing such a facility will necessarily disclose that student's transgender status.").

The Court finds any potential harm is mitigated by the accommodation[27] provided in H.B. 264 and does not support Plaintiff's request for a preliminary injunction.

---

[27] Plaintiffs take issue with the accommodation in H.B. 264, alleging there may be circumstances where single-user restrooms are not available. The Court has concerns with this argument because Plaintiffs originally represented that the library at BSU—where Jones spends a lot of time—has no single-occupancy restroom. Dkt. 11-1, at 7. In response, however, Defendants noted there are two single-occupancy restrooms just off the first-floor lobby. Dkt. 29, at 5. As for Smith, Plaintiffs represent there are no convenient single-occupancy restrooms for her to use and that Defendants "do not dispute" that conclusion. Dkt. 33, at 10. It is not clear, however, when Defendants learned of Smith's true identity. The Court believes it was not until *after* Defendants filed their response brief. Thus, they did not have time to investigate and take a position on whether there are single-occupancy restrooms that would be convenient for Smith. To the extent this is

### 3. *Balance of Hardships and the Public Interest*

As outlined, because the Government is a party in this suit, the last two *Winter* factors merge. *See Jewell*, 747 F.3d at 1092.

Neither party discussed either of these factors (together or separately) in any detail. Instead, both simply argue their side prevails on the third and fourth prongs considering their respective success on the first prong.

There is no doubt the public has an interest in this issue. And the interest is significant on both sides, as is the potential hardship. While the enactment of H.B. 264 could prove to be a hardship for transgender individuals, the staying of H.B. 264 could prove a hardship for those who seek privacy from the opposite sex while using the restroom. In short, these last two factors are roughly even with respect to both sides.

## VI. CONCLUSION

"In deciding a motion for a preliminary injunction, the district court is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (cleaned up). At this stage, it is Plaintiffs burden to make a "a clear showing that [they are] entitled to such relief." *Winter*, 555 U.S. at 22.

Having reviewed the record, the briefs, and the parties' arguments, the Court finds Plaintiffs have failed to meet their burden to obtain preliminary injunctive relief. They are

---

a disputed fact, the Ninth Circuit has long recognized district courts need not resolve questions of fact to decide motions for a preliminary injunction. *See Dymo Industries, Inc. v. Tapewriter, Inc.,* 326 F.2d 141, 143 (9th Cir.1964). The Court is not saying Plaintiffs are incorrect with respect to Smith's access to single-occupancy restrooms. However, the Court harbors concerns because Plaintiffs were incorrect with respect to Jones and his access to single-occupancy restrooms in the library. Plaintiffs carry the burden on a motion for preliminary injunction and the Court finds they have not met their burden as to these arguments.

unlikely to prevail on their equal protection claim because Defendants have outlined that H.B. 264 is substantially related to its interest in protecting the privacy of the sexes—*even as applied specifically to Plaintiffs*. The Court also finds Plaintiffs' Title IX claim and Jones's Title VII claim equally suspect at this stage. Finally, the Court finds any harm here can be mitigated by the accommodation of the single-occupancy restrooms required under the statute.

## VII. ORDER

1.  Plaintiffs' Motion for Preliminary Injunction (Dkt. 11) is DENIED. The Court will not enjoin H.B. 264 at this time.

2.  Plaintiffs' Motion to Seal and to Proceed Anonymously (Dkt. 12) is GRANTED.

3.  Defendants' Motion to File Declaration Under Pseudonym (Dkt. 30) is GRANTED.

4.  Plaintiffs' Second Motion to Seal (Dkt. 36) is GRANTED.

DATED: August 23, 2025

David C. Nye
Chief U.S. District Court Judge